UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY HANA & ALICIA HANA,

               Plaintiffs,                        Case No. 11-14442

v.                                        Paul D. Borman
                                        United States District Judge

WELLS FARGO BANK, WACHOVIA
BANK, PRIME PLUS MORTGAGE, INC.
& BADRI HANNOSH,

               Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants Wells Fargo Bank, N.A. and Wachovia Bank's Motion to Dismiss. (Dkt. No. 6.) Plaintiffs filed a response. (Dkt. No. 9.) Defendants filed a reply. (Dkt. No. 10.) The Court scheduled a hearing for May 10, 2012, at which counsel for Defendants appeared. Plaintiffs did not appear and in fact informed the courtroom deputy by phone a few days before the hearing that they did not wish to pursue their case further. Accordingly, the Court did not hear argument from Defendants on May 10, 2012 and will decide the matter on the briefs as filed, as permitted under E.D. Mich. L.R. 7.1(f)(2).[1]

_____

[1] Although Plaintiffs' counsel withdrew from the case on February 23, 2012 (Dkt. No. 15), counsel had already filed a response to Defendants' motion so the matter was fully briefed by counsel. Upon the withdrawal of their counsel, the Court afforded Plaintiffs the opportunity to seek new counsel, and to file a new response to Defendants' motion if new counsel wished. Plaintiffs chose not to avail themselves of this opportunity, proceeded *pro se*, and have indicated to the Court in a phone message that they have chosen not to further oppose the motion.

1

**INTRODUCTION**

Plaintiffs filed their Complaint against Defendants Wells Fargo Bank, N.A. and Wachovia Bank (collectively "Wells Fargo") in Macomb County Circuit Court, seeking to set aside the foreclosure sale of their home and to quiet title to the home in Plaintiffs. Wells Fargo removed the action to this Court on October 10, 2011.[2] (Dkt. No. 1.) Wells Fargo now moves to dismiss the Complaint, arguing that Plaintiffs failed to act within the redemption period and have failed to plead with the requisite particularity, or in satisfaction of the statute of frauds, their claim that Wells Fargo engaged in fraudulent conduct with regard to the foreclosure and sale of their home. For the reasons that follow, the Court should GRANT Wells Fargo's motion to dismiss.

## I.   BACKGROUND

On or about June 23, 2004, Plaintiffs received a mortgage loan on their residential property located at 50222 Basil Drive, Macomb, Michigan 48044 ("the Property") in the principal amount of $268,568.00. (Dkt. No. 6, Defs.' Mot. Ex. 3, Mortgage.)[3] The Mortgage securing the loan was

---

[2] Prime Plus Mortgage and Badri Hannosh also were named as Defendants in Plaintiffs' Complaint. On March 21, 2012, the Court issued an Order requesting Plaintiffs to show cause why Defendants Prime Plus Mortgage and Badri Hannosh should not be dismissed based upon Wells Fargo's showing that these two Defendants had been fraudulently joined to defeat removal. Plaintiffs did not respond to the Court's Show Cause Order but, in their response to Wells Fargo's motion to dismiss, Plaintiffs conceded that both Defendants had been improperly joined. The Court entered an Order dismissing both of these Defendants on March 21, 2012. (Dkt. No. 17, Order Dismissing Defendants Prime Plus Mortgage, Inc. and Badri Hannosh.)

[3] Plaintiffs refer to the Mortgage and the Foreclosure Sale but fail to attach any of the relevant documents to the Complaint. Defendants have attached the relevant documents to their Motion to Dismiss and Plaintiffs have not contested the authenticity of any of the documents. Accordingly, the Court can consider these documents in ruling on Wells Fargo's Motion to Dismiss. The Court may also consider the January 15, 2009 Loan Modification Agreement executed by Plaintiffs which also is central to the claims in their Complaint, a copy of which is attached to Wells Fargo's Motion to Dismiss. In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2)

recorded on June 30, 2004.  (Defs.' Mot. Ex. 3.)

In 2009, Plaintiffs "fell into hard times."  (Pls.' Resp. 3.)  On January 15, 2009, Plaintiffs entered into a Modification Agreement (Loan Work-Out) with Wells Fargo.  (Defs.' Mot. Ex. 4.) Plaintiffs became delinquent on their loan payments and in 2010 Wells Fargo proceeded with foreclosure of Plaintiffs' home. On December 10, 2010, Wells Fargo purchased the property at a sheriff's sale.  (Defs.' Mot. Ex. 5, Sheriff's Deed.)  The Sheriff's Deed was registered on December 20, 2010 and indicated that the last day to redeem the property was June 10, 2011.  (*Id*.)

In May, 2011, Plaintiffs allege, they began discussions with Wells Fargo regarding a short sale of their home.  Plaintiffs refer to a May 19, 2011 letter from Wells Fargo that contains terms and conditions for approval of a short sale.  (Defs.' Mot. Ex. 1.)  Plaintiffs allege that Wells Fargo approved a short sale of their home on June 16, 2011 and subsequently "renigged" on that promise. (Pls.' Mot. 4.)  This action followed.  For the reasons that follow, the Court GRANTS Defendants' motion to dismiss.

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true

---

matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 2499, 2509 (2007).

legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1)

4

documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 2499, 2509 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997).

### B.      Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit has interpreted Rule 9(b) to require that a plaintiff allege "'the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*., 341 F.3d 559, 563 (6th Cir. 2003)).

When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the

"short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8. "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'" *Sanderson*, 447 F.3d at 876 (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988)). "'On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.'" *Id*. (quoting *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

## III.    ANALYSIS[4]

### A.    Failure to Redeem the Property Prior to Expiration of the Redemption Period is Fatal to Plaintiffs' Fraud and Quiet Title Claims (Counts II and V)

The foreclosure sale of Plaintiffs' home occurred on December 10, 2010. (Dkt. No. 6, Defs.' Mot. Ex. 5.)  As explained in the Sheriff's Deed, Plaintiffs' right to redeem the property under Michigan law, therefore, expired on June 10, 2011.  *Id*. 6; Mich. Comp. Laws § 600.3204(8). Plaintiffs claim that Wells Fargo extended the redemption period to September 16, 2011, a claim that Wells Fargo disputes because Plaintiffs have failed to produce a writing sufficient to satisfy the statute of frauds in support of such an alleged financial accommodation.  *See infra* discussion at pages 14-16.  Even assuming, however, that the redemption period was extended to September 16, 2011, there is no dispute that Plaintiffs did not succeed in redeeming the property prior to that date and that on that date, Wells Fargo became vested with all right, title and interest in the property. Filing this action on July 19, 2011, and serving Wells Fargo on September 20, 2011, did nothing to further toll the redemption period.  Absent of a clear showing of fraud or irregularity in the foreclosure proceedings, Plaintiffs can not challenge Wells Fargo's full right, title and interest in the

---

[4] The Court does not address Count I, which was directed solely at the allegedly fraudulently-joined and now-dismissed Defendants, Prime Plus Mortgage and Badri Hannosh.

property.

Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.") Several Michigan state and federal courts, discussed below, have applied *Piotrowski* to bar claims by former property owners on their foreclosed properties after the period of redemption has passed.[5] Even if an action challenging a foreclosure is filed before the expiration of the redemption period, this does not toll the running of the redemption period and does not change this result. This principle was established by the Michigan Court of Appeals in *Overton v. MERS*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009). Plaintiff in *Overton* filed suit against MERS and others challenging the foreclosure and sale of his property at public auction on April 18, 2007. *Id*. at *1. The redemption period expired on October 18, 2007 and plaintiff filed suit on September 21, 2007. *Id*. The Michigan Court of Appeals rejected plaintiff's argument that

---

[5] Most courts in this District have analyzed the issue as one of standing, but some have noted that Article III standing is not in question and the issue is more appropriately addressed as one attacking the merits of the claim. *See, e.g. Tatar v. Trott & Trott, P.C.*, No. 10-12832, 2011 WL 3706510, at *7 n.3 (E.D. Mich. Aug. 3, 2011) (collecting cases and addressing the issue as a merits decision, not a standing decision, and concluding that a failure to challenge a foreclosure during the redemption period deprives the mortgagor of the right to mount a challenge after the redemption period has expired and the purchaser has been vested with all right, title and interest in the property). *See also Rainey v. U.S. Bank Nat'l Ass'n*, No. 11-12520, 2011 WL 5075700, at *2-3 (E.D. Mich. Oct. 25, 2011) (reasoning that as continued possessors of the property who claim continued right to legal ownership based on defects in the process that deprived them of that property, plaintiffs clearly have Article III standing); *Ahmad v. Wells Fargo Bank*, *N.A.*, No. 11-15204, 2012 WL 917863, at *3-5 (E.D. Mich. Feb. 27, 2012) (agreeing with the Judge Lawson's analysis in *Rainey* that the expiration of the redemption period does not deprive a homeowner of Article III standing to bring a quiet title claim, but finding that plaintiffs' claims were subject to dismissal on other grounds).

his filing suit tolled the redemption period:

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suite before the redemption period expired, that was insufficient to toll the redemption period. 'The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.' *Schulties v. Barron*, 16 Mich. App. 246, 247-48; 167 NW2d 784 (1969). Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished. *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187; 4 NW2d 514 (1942).

2009 WL 1507342, at *1.

Multiple courts in this district have followed *Overton*, which relied on the decision of the Michigan Supreme Court in *Piotrowski*, and have denied challenges to foreclosures and statutory sales by advertisement following expiration of the period of redemption, regardless of the date of filing of plaintiff's complaint. *See Snell v. Wells Fargo Bank, et al.*, No. 11-cv-12018, 2012 WL 1048576, at *3 (E.D. Mich. March 28, 2012) (citing *Overton* and holding that under Michigan law plaintiffs lost standing to assert any claim with respect to the foreclosed property after the date on which the redemption period expired, at which time defendant became vested with all right title and interest in the property, and further holding that this "outcome is not altered by Plaintiffs' filing of th[e] lawsuit . . . one day before the expiration of the redemption period"); *Dingman v. Onewest Bank, FSB*, No. 11-15706, 2012 WL 884357, at *4 (E.D. Mich. March 14, 2012) (citing *Overton* and holding that plaintiffs lacked standing because they failed to redeem the property before the redemption period expired on December 2, 2011, at which time all right, title and interest vested in OneWest, and further finding that such an outcome was not altered by the fact that plaintiffs filed

8

their lawsuit challenging the foreclosure on November 28, 2011, before the redemption period expired); *Gendjar v. BAC Home Loans Servicing, LP*, No. 11-14557, 2012 WL 130139, at *2 (E.D. Mich. Jan. 17, 2012) (citing *Overton*, recognizing that Michigan law provides that a former owner of foreclosed property loses all right, title and interest in the property once the period of redemption expires, holding that plaintiffs therefore lacked standing to assert a claim thereafter and that plaintiffs' filing of a lawsuit on the day the redemption period expired did not toll the redemption period); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *4 (E.D. Mich. Nov. 1, 2011) (citing *Overton*, analyzing the issue as one of standing and concluding that, having made no attempt to challenge the foreclosure during the redemption period, plaintiff lacked standing to challenge the sale because all right, title and interest vested in the purchaser at the time of the sheriff's sale); *Mitan v. Federal Home Loan Mortgage Corp.*, No. 10-13286, 2011 WL 4837502, at *2 (E.D. Mich. Sept. 22, 2011) (citing *Overton* and finding that plaintiffs lacked standing to sue where the redemption period expired following foreclosure and plaintiffs failed to redeem during the redemption period even where suit was filed before the expiration of the redemption period); *Moriarty v. BNC Mortgage, Inc.*, No. 10-13860, 2010 WL 5173830, at *2 (E.D. Mich. Dec. 15, 2010) (citing *Overton* and concluding that pursuant to Michigan law, once the redemption period following foreclosure expired, the former owner's right, title and interest in the property are extinguished and former owner lacks standing to challenge the foreclosure and sale, even when suit is filed before expiration of the redemption period). Plaintiffs do not address this argument or any of these decisions in their responsive brief.

Whether analyzed as an issue of standing or as a merits-based challenge, the Court agrees with Wells Fargo that Plaintiffs cannot challenge the foreclosure and sale to Wells Fargo in the

instant case.  The redemption period expired on June 10, 2011 according to the Sheriff's Deed, or September 16, 2011 accepting Plaintiffs' claim that the period was extended.  Plaintiffs originally filed suit on July 19, 2011 and served Wells Fargo on September 20, 2011.  There is no dispute that Plaintiffs did not successfully redeem their property on or before September 16, 2011.  Under Michigan law, after that time they lost all right, title and interest in their property along with the right to challenge any aspect of the foreclosure process.

The only possible exception to the rule that Plaintiffs' claims are absolutely barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity."  *Tatar*, 2011 WL 3706510, at *8.  "'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'"  *Sweet Air Inv. Inc. v. Kenney*, 275 Mich. App. 495, 497 (2007) (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997), citing *Detroit Trust Co. v. Aggozinio*, 280 Mich. 402, 405-06 (1937));  *Schulties v. Barron*, 16 Mich. App. 246, 247-48 (1969) ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.").

A claim of fraud under Michigan law requires the following elements: (1) that the defendant made a misrepresentation; (2) that it was false; (3) that defendant knew at the time of making the statement that it was false or was reckless with regard to knowledge of the truth; (4) that defendant made it with the intention that plaintiff would rely on it; (5) that plaintiff did rely and act on the misrepresentation; and (6) that plaintiff suffered injury as a result.  *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).  Plaintiffs bear the burden of establishing

their claim of fraud by clear and convincing evidence and the failure to allege and establish each element independently defeats a claim of fraud. *Id.* Claims that sound in fraud must meet the pleading requirements of Federal Rule of Civil Procedure 9(b), and must include "the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson*, 447 F.3d at 877.

Plaintiffs allege that Wells Fargo made false representations regarding the approval of a short sale of Plaintiffs home. (Dkt. No. 1, Ex. A, Compl. ¶ 21-22.) Neither Plaintiffs' Complaint, nor their response to Wells Fargo's motion, indicates who at Wells Fargo agreed to accept a short sale of Plaintiffs' property, or when they agreed to a short sale. The May 19, 2011 letter attached to Plaintiffs' Complaint appears to be a letter from Defendants to Plaintiffs explaining the steps to be taken to complete a short sale and setting forth generally the terms and conditions of the short sale program. (Pls.' Resp. 3 (referring to but not attaching the Exhibit "1" attached to Plaintiffs' Complaint); Defs.' Mot. Ex. 1.) The letter follows the foreclosure sale by several months and therefore, the terms of the short sale program relating to suspension of a foreclosure sale cannot relate to Plaintiffs' efforts to secure and present a short sale for approval. The letter, which also proposes other possible alternatives for the buyer to consider, such as a loan modification, can not be construed as an agreement to accept a short sale - it merely outlines the steps to be taken by a mortgagee wishing to request approval of a short sale.

The only other "document" on which Plaintiffs rely is a page of "notes of Plaintiffs realtor, Trinity Realty," which Plaintiffs offer as proof that "everything was in order for the short sale when on June 20, 2011 without any warning, approval was rescinded." (Pls.' Resp. 3 (referring to but not

11

attaching the Exhibit "2" attached to Plaintiffs' Complaint).)  This document indicates that Plaintiffs'

realtor had conversations with individuals at Wells Fargo regarding the short sale of Plaintiffs' home.

An entry dated June 2, 2011 states that: "[Rita] indicated Hana received a letter indicating expiration

date is September 16, 2011."  The final entry, dated June 20, 2011, indicates that the realtor "talked

to Rita Sota, her Attorneys advised her this property is already in foreclosure therefore unable to

continue with short sale, filed closed out."  (Pls.' Resp. 3 (referring to but not attaching the Exhibit

"2" attached to Plaintiffs' Complaint).)

The following allegations, based in part on the foregoing documents, represent the sum total

of Plaintiffs' allegations of fraud:

> Defendants offered Plaintiffs a short sale on the property in writing on May 19, 2011.
> Pursuant to page 4, number 7 of the letter entitled Termination of This Request the
> bank agreed "Unless otherwise agreed by the parties, this request will terminate on
> September 16, 2011 if the sale does not close.["] (Please see Exhibit 1, Letter from
> Bank)

Dkt. No. 1, Ex. A, Compl. ¶ 21.

> Prior to this date and the expiration of the redemption period there was a ready,
> willing and able buyer.  Defendants approved the short sale on June 16, 2011 and on
> June 20 stated that the property was already in foreclosure and therefore unable to
> follow through with the short sale even though they had extended the redemption
> period in writing until September 16, 2011.  (Please See Exhibit B, Bank Letter).
> Defendant's [sic] breached the contract and rescinded on the short sale improperly
> causing the sale not to go through.
> Defendants' representations were false when they were made regarding the short sale.
> Defendants knew its representations were false when they were made or made them
> recklessly without knowing whether they were true.
> Defendants intended that Plaintiffs rely on these representations.
> Plaintiffs relied on the false representations.
> As a direct result of Defendants' fraudulent representations, Plaintiffs suffered
> substantial economic loss.

Id. ¶¶ 22-28.

In their responsive brief, Plaintiffs describe the basis of their fraud claim as follows:

12

> [T]he misrepresentation of fraud revolves around the documents and [non-written]
> representations made by the Defendant in approving a short sale and then failing
> to allow Plaintiffs to proceed. This is in and of itself efficient [sic] to establish that
> claim. As to the time and place and context of the misrepresentations, they are set
> forth in the documents attached to this brief and are stated in detail. Plaintiffs have
> shown reasonable reliance upon the representations made since the documents
> attached set forth promises and representations made by the Defendant directly to the
> Plaintiffs and this reliance was reasonable.

Pls.' Resp. 3 (referring to but not attaching the Exhibits 1 and 2 attached to Plaintiffs' Complaint).

The documents on which Plaintiffs rely do not support their claim of fraud. First, the "notes" taken by Plaintiffs' realtor, Trinity, are not statements or writings containing representations made by the Defendants to Plaintiffs - they are notes taken by a third party. "The initial consideration, then, is whether defendant's agents made a material representation to plaintiff." *Hi-Way Motor*, 398 Mich. at 336. Reliance on these "notes" does not sufficiently explain the "time, place and content" of any alleged misrepresentation by Defendants to Plaintiffs. The notes suggest that on June 2, 2011, "Rita" from Wells Fargo told Plaintiffs' realtor that Plaintiffs "received a letter indicating expiration date is 9/16/11." This entry does not indicate what "expired" on September 16, 2011. Nor does it indicate whether Plaintiffs told "Rita" that they had received such a letter or whether "Rita" was indicating that Wells Fargo had sent such a letter. Importantly, no such letter is attached to Plaintiffs' Complaint or Motion. These factual allegations are simply insufficient to state a "strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Kenney*, 275 Mich. App. at 497.

Simply put, none of the documents support Plaintiffs' claim that Wells Fargo promised to accept a short sale of Plaintiffs' home. The most that can be alleged based on the documents and allegations is that Wells Fargo agreed to consider a short sale. Although it appears that Plaintiffs were working with Wells Fargo on a possible short sale, Wells Fargo never indicated that the short

sale was approved. *See Dingman*, 2012 WL 884357, at *6 (finding that plaintiffs failed to plead a

claim of fraud where they alleged that OneWest, among other things, orally promised to postpone the

sheriff's sale of their home while they considered a loan modification agreement where "[a]t best,

OneWest reviewed plaintiffs' request for modification; [but] never indicated it would be granted.").

> **B.    Plaintiffs Have Failed to Produce a Writing, Signed by an Authorized Representative of Defendants, Sufficient to Satisfy the Michigan Statute of Frauds Requirements Applicable to Accommodations Made by Financial Institutions, Which is an Independent Basis to Dismiss All of Plaintiffs' Fraud-Based and Breach of Contract Claims (Counts II and IV)**

Michigan's statute of frauds, Mich. Comp. Laws § 566.132, requires that any agreement by

a financial institution to modify a loan agreement or forbear from proceeding with their foreclosure

rights must be in writing and signed by an authorized agent of the financial institution. Section

566.132 provides in relevant part:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> > (a) A promise of commitment to lend money, grant or extend credit, or make any other financial accommodation.
> >
> > (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
> >
> > (c) A promise of commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132. *See Williams v. JP Morgan Mtg. Acquisition Corp.*, No. 09-12106,

2010 WL 1052356, at *4 (E.D. Mich. March 19, 2010) (finding that third party notes of conversations

with defendant's representatives, allegedly indicating an agreement to delay a sheriff's sale, at most

"offer[ed] proof of a verbal promise and not a writing signed by Defendant as required by [Mich.

Comp. Laws § 566.132].")  *See also Crown Technology Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550 (2000) ( holding that, under the "unqualified and broad ban" of section 566.132, "a party is precluded from bringing a claim - no matter its label - against a financial institution to enforce the terms of an oral promise . . . including actions for promissory estoppel"); *Snell*, 2012 WL 1048576, at *7 (citing *Crown Technology* and concluding that Michigan law precludes fraud and misrepresentation claims based on oral promises); *Dingman*, 2012 WL 884357, at *5 (citing *Crown Technology* and dismissing plaintiffs' fraud claims that would require the court to enforce alleged oral promises and representations in contravention of the statute of frauds).

There is absolutely no evidence, other than alleged oral promises, that Wells Fargo ever agreed to accept a short sale of Plaintiffs' home.  And in fact, the only written evidence provided by Plaintiffs indicates that Wells Fargo expressly declined to accept a short sale of the property.  Even if Wells Fargo did extend the redemption period (a promise also not evidenced by a writing signed by an authorized agent of the Defendants), they certainly did not agree, in a writing signed by an authorized agent, to accept any specific financial accommodation within that time frame.

C.   **Count III Fails to State a Claim Against These Defendants, Which are Financial Institutions not Covered by the Michigan Mortgage Brokers, Lenders and Servicers' Licensing Act (Count III)**

The Michigan Mortgage Brokers, Lenders and Servicers Licensing Act ("MBLSLA") states that it does not apply to a national bank, such as Wells Fargo: "This act does not apply to . . . [a] depository financial institution whether or not the depository financial institution is acting in a capacity of a trustee or fiduciary."  Mich. Comp. Laws § 445.1675(a).  A "depository financial institution" is defined as "a state or nationally chartered bank . . . ."  Mich. Comp. Laws § 445.1651a.

Plaintiffs do not dispute that the MBLSLA does not apply to Wells Fargo.  Plaintiffs respond

15

to this argument by stating that "the mortgage was [sic] World Savings Bank and therefore the Defendant has not established this defense." Plaintiffs did not sue World Savings Bank and Plaintiffs offer no explanation of how this response defeats Wells Fargo's claim that they cannot be held liable under the MBLSLA. This claim is dismissed.

> **D.      Plaintiffs' Breach of Contract Claim, to the Extent it is Based Upon the Terms and Conditions of the May 19, 2011 Home Affordable Foreclosure ("HAFA") Letter, Fails to State a Claim (Count IV)**

The May 19, 2011 HAFA letter that Plaintiffs attach to their Complaint, which sets forth the Terms and Conditions applicable to the Short Sale Program, includes a term regarding Foreclosure Sale Suspension that simply does not apply to Plaintiffs' property which, at the time that the letter was sent on May 19, 2011, had been sold at a foreclosure sale five months earlier - on December 10, 2010. (Def.'s Mot. Ex. 5, Sheriff's Deed on Mortgage Sale.) The HAFA letter contains another provision regarding Termination of Request that states that the request for short sale will terminate on 3/16/2011 if the sale does not close. (Def.'s Mot. Ex. 1, ¶ 7.) This date also precedes the date of the letter.

In their response, Plaintiffs describe the basis for their breach of contract claim as follows: "Plaintiffs claim revolves around the fact that they were promised a short sale, found a buyer, all ready to close, when Defendant renigged at [sic] agreement." (Dkt. No. 9, 4.) As discussed earlier, Plaintiffs have failed to produce written evidence of a contract for a short sale sufficient to satisfy the statute of frauds. Plaintiffs fail to state a claim for breach of contract.

## IV.      CONCLUSION

Each of Plaintiffs' claims, regardless of how they are styled, relies on the alleged oral

16

promises of Defendants that they would approve a short sale of Plaintiffs' property and then failed to do so. Such promises are unenforceable under Michigan law and, in any event, there is no dispute that Plaintiffs failed to redeem the property before the expiration of the redemption period. Plaintiffs have failed to plead with particularity the strong case of fraud that would warrant setting aside the foreclosure sale. For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (Dkt. No. 6).[6]

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 15, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 15, 2012.

S/Denise Goodine
Case Manager

---

[6] Count VI of Plaintiffs' Complaint, which seeks injunctive relief to which Plaintiffs are not entitled, does not state a claim.

17

18